## McAVEIGH v. PELHAM PARK R. CO. et al.

(Supreme Court, Appellate Term.   December 22, 1909.)

1. ACCOUNT STATED (§ 1*)—ELEMENTS.

To make an "account stated," the indebtedness must refer to a subsisting debt, and there must be a mutual examination of the account, a balance struck, and an agreement that the balance is correct and will be paid; a party relying thereon being required to prove that the account was presented, and by mutual agreement it was accepted as correct, and that the debtor promised to pay the amount so stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 2; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 93–98; vol. 8, p. 7561.]

2. CORPORATIONS (§ 398*) — OFFICERS — TERMINATION OF TERM — SUBSEQUENT ACTS.

The act of an ex-officer of a corporation in O.K.'ing a bill against a corporation was ineffective.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 398.*]

3. CORPORATIONS (§ 398*)—ACTS—AUTHORITY OF STOCKHOLDERS.

A corporation cannot act by a stockholder, but only through its duly authorized officers and agents.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1593; Dec. Dig. § 398.*]

4. CORPORATIONS (§ 398*)—OFFICERS—IMPLIED AUTHORITY—TREASURER.

The fact that a representative of stockholders of a corporation had implied authority to receive money belonging to it did not confer on him any implied authority to admit the correctness of a claim against the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1593; Dec. Dig. § 398.*]

5. ACCOUNT STATED (§ 6*)—CORRECTNESS—ADMISSION—PAYMENT ON ACCOUNT.

Payment on an account is not an admission of the correctness of the balance, so as to establish an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 18; Dec. Dig. § 6.*]

Appeal from Municipal Court, Borough of the Bronx, First District.

Action by James McAveigh against the Pelham Park Railroad Company and another.   From a Municipal Court judgment for plaintiff, defendants appeal.   Reversed, and new trial ordered.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

James L. Quackenbush (J. Tufton Mason, of counsel), for appellants.

James F. Donnelly, for respondent.

GOFF, J.   Complaint was on contract.   The bill of particulars set forth items of expense from August 5 to December 24, 1908, for work done by horses from May 10 to September 28, 1908, and for use of coaches during winter of 1908, in all amounting to $617.41.   A credit of $209 was allowed, leaving a balance of $462.41.   At commencement of trial, plaintiff was permitted to amend by declaring on an account stated, instead of on contract.   This changed the order and quality of

proof, and relieved plaintiff from proving the items of expense and the performance and value of the work, but required him to prove by a fair preponderance of competent and credible testimony that an account was presented, that by mutual agreement of the parties it was accepted as correct, and that the defendants promised to pay the amount.

To make a stated account, the indebtedness must refer to a subsisting debt. Schutz v. Morette, 146 N. Y. 137, 40 N. E. 780. There must be a mutual examination of the account, a balance struck, and agreement that the balance is correct, and that it will be paid. Lockwood v. Thorne, 18 N. Y. 285; Spellman v. Muehlfeld, reversed on another point, 48 App. Div. 265, 62 N. Y. Supp. 746. The demand for such balance is essentially the same as if a promissory note had been given for it. Volkening v. De Graaf, 81 N. Y. 268. Whether the plaintiff proved his case as one of stated account can only be determined by applying the test of these rules.

It appears that the defendants were under one management. The plaintiff was superintendent, and as such collected from the conductors the fares received by them, and from time to time deposited them in bank. He had been in the habit of expending small sums of money for various purposes on account of defendants, and receiving payment therefor from the president. On October 11, 1908, plaintiff presented a statement of defendants' indebtedness (to what amount was not stated), and received from him $209 on account. What the balance was, if any, cannot be gathered from the testimony. It is fairly inferable that the management of the defendant companies was not successful or profitable, and that the stockholders resolved upon a change. On December 12th of the same year the stockholders elected a new board of directors, who appointed a new president and a new superintendent. Plaintiff was notified of the change, and required to turn over the properties of the companies to his successor. This he refused to do until December 19th. Subsequently he presented the statement on which he sued to Mr. Auld, a former secretary of one of the defendant companies, who O. K.'d the statement. Mr. Auld's testimony as to his connection with the defendant companies was very vague and unsatisfactory, and it was equally so as to the time when he so marked the statement. At first he said he did it about the 1st of December; but under the skillful leading questions of plaintiff's counsel he said that he did it at the end of December. It should be noted that the last item on the statement is dated December 24th. Was the presenting of the statement to Auld a presentment to defendant? He at one time testified that his connection with the company ceased about December 19th, and at another time that it ceased on the 22d. Whichever it was, it is clear from his own testimony and from the whole record that when he put the letters "O. K." upon the statement he had ceased to be an officer or agent of defendants, had no power to bind them, and his marking was worthless. The fact that, at the time plaintiff presented the statement to Auld, he knew that there had been a change in the management, and that himself and Auld had been superseded, gives ample reason to doubt the good faith of the transaction, apart from the errancy of the testimony given in its support.

Plaintiff further relies on his contention that he spoke to Mr. Fisher about his bill, and that Fisher told him to send it to Gaynor, and that it would be paid. There is no evidence that Fisher was an officer or agent of defendants. Statements (largely by counsel) that he represented a majority of the stockholders had no probative value. Even if he was such representative, that would not give him authority to act for or bind the companies. A corporation can only act through and be bound by its officers or its duly authorized agents. A stockholder is neither. It is urged that, Fisher having accepted the balance of the companies' moneys which remained in the hands of plaintiff, and having turned them in to their treasurer, he consequently had authority to bind the companies by his promise to pay plaintiff's account. No such consequence or implied authority can be inferred from his receiving the moneys; for, while he may have had authority to receive money, he had no authority to create a debt, and that is what he would have, if his promise were held to bind the defendants. And the same principle applies to Gaynor, the auditor. His statement that plaintiff's bill would be paid in a few days cannot be construed into a promise of the defendants to pay. There is no evidence that Gaynor was the auditor of, or an officer or agent of, defendants, nor of any custom or course of business in which he was held out as such. It is proper to observe that neither Fisher nor Gaynor testified on the trial. All reference to them came from the plaintiff.

Further reliance is placed by plaintiff on the undisputed testimony that the former president paid a certain amount on account of the bill rendered to him. The mere payment on account, standing alone, is not an agreement as to its correctness; nor is it a promise to pay the balance. No evidence was adduced as to anything that the president had said. Besides, he could not have agreed to or promised to pay the account sued upon, for the transaction with him took place on October 11th; whereas, the account contains items up to and including December 24th, and one charge is $50, for the use of two coaches during the winter of 1908. How could the former president agree to the correctness of, and to pay, the balance of an account that had never been, and could not have been, rendered as an account of a subsisting indebtedness?

In every element necessary to sustain an action on an account stated, the plaintiff has failed, and the motion for dismissal at the close of the case should have been granted.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.